**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-cr-2 (MTT) |
| | ) | |
| WIHLY HARPO-BROWN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Defendant Wihly Harpo-Brown was convicted of one count of corruptly influencing the due administration of justice in violation of 18 U.S.C. § 1503. Doc. 73. Harpo-Brown now moves for a judgment of acquittal, or in the alternative, a new trial. Doc. 77. For the following reasons, that motion is **DENIED**.

## I. BACKGROUND

Harpo-Brown's criminal conviction stems from three civil matters in which Harpo-Brown was the pro se Plaintiff.[1] Doc. 46 at 1. In one of those cases, Harpo-Brown's fifteen-page complaint named at least thirty-five defendants and consisted of eighty pages of exhibits and a ten-page supplement that requested additional relief. Doc. 71-8. The Magistrate Judge assigned to that case found Harpo-Brown's complaint to be "the quintessential shotgun pleading that has been soundly condemned by the Eleventh Circuit Court of Appeals" and consequently ordered Harpo-Brown to submit an amended complaint that complied with the Federal Rules of Civil Procedure. *Id.* at 2-3.

---

[1] Harpo-Brown's superseding indictment alleged those "civil matters were *Wihly Harpo-Brown v. Daniel J. Craig, et al.*, 1:20-cv-137, filed on September 30, 2020; *Wihly Harpo-Brown v. Lynn Bailey, et al.*, 1:20-cv-161, filed on November 17, 2020; and *Wihly Harpo-Brown v. Intermark Management Corporation, et al.*, 1:20-cv-176, filed on December 4, 2020." Doc. 46 at 1.

Five days later, the Magistrate Judge ordered Harpo-Brown to "cease all attempts to serve any defendant until further instruction by the Court."  Doc. 71-9.

Apparently unhappy with those instructions, Harpo-Brown filed a "Motion for Additional Time to Amend Complaint & Motion to Set Aside All Orders as Void & Motion for Recusal, etc.," in each of his three civil cases pending before the Magistrate Judge. Docs. 71-10; 71-11; 71-13.  In each motion, Harpo-Brown disclosed the first name of the Magistrate Judge's wife and the neighborhood in which the Magistrate Judge resided.  *Id.*  Harpo-Brown's motions further claimed that "[d]ue to Plaintiff's past intimate association with [Magistrate Judge] Plaintiff holds intimate details of [Magistrate Judge's] personal life that are salacious and presumably NOT desired for embarrassing public consumption that is about to occur, some of which would warrant [Magistrate Judge] being booted from the bench; morally censured; and legally prosecuted."  *Id.* Harpo-Brown filed a subsequent motion that asserted "his absolute intent to completely disregard" the Court's Order directing him to cease all attempts to serve any defendant.[2] Doc. 71-12 at 5.

On January 13, 2021, a grand jury indicted Harpo-Brown on one count of corruptly influencing the due administration of justice in violation of 18 U.S.C. § 1503. Harpo-Brown was arraigned and provided Court appointed counsel on February 2, 2021.[3]  Docs. 8; 11; 14.  Harpo-Brown, however, requested to represent himself.  Doc. 23.  The Court convened a *Faretta* hearing on March 31, 2021, and concluded Harpo-

---

[2] Harpo-Brown filed this motion in 1:20-cv-161 even though it appears to be in response to the Court's order in 1:20-cv-137.

[3] The Court granted a scheduling order that same day which gave Harpo-Brown forty days to file pretrial motions and the Government fourteen days to respond to any such motions.  Doc. 15.

Brown "knowingly, voluntarily, and intelligently waived counsel."  Doc. 36 (citing *Faretta v. California*, 422 U.S. 806 (1975); *United States v. Cash*, 47 F.3d 1083, 1088 (11th Cir. 1995)).  The Court maintained Court-appointed counsel in a standby capacity.  Doc. 36*.* After a variety of pretrial motions, and other excludable delay due to the COVID-19 pandemic, Harpo-Brown's three-day trial began on July 27, 2021.  Docs. 67; 68; 69. The jury returned a guilty verdict on July 29, 2021.[4]  Doc. 73.

Harpo-Brown filed a timely motion for judgment of acquittal or in the alternative, a new trial, on August 13, 2021.  Doc. 77.  In that motion, Harpo-Brown contends: (1) the prosecution failed to conduct trial within the time required by the Speedy Trial Act; (2) notwithstanding the alleged Speedy Trial Act violations he was deprived of a fair trial by virtue of deliberate and willful custodial abuse causing debilitating physical injury; (3) the evidence was insufficient to support the verdict; (4) the weight of evidence is against the verdict; (5) the verdict was obtained as a result of perjured testimony, nondisclosure of exculpatory evidence; and untimely disclosure of discovery material; and (6) the prosecution was based on constitutionally protected free speech.  *Id.*  The Government responded in opposition on August 25, 2021.  Doc. 79.

After the Government's response, Harpo-Brown moved the Court to "stay the issuance of judgment" to allow him to "obtain the trial transcript for review[.]"[5]  Doc. 86.

---

[4] Several of the Government's pretrial motions remain outstanding in this case.  Because the trial is now complete, the Government's motions (Docs. 50; 51; 59) are **DISMISSED** as moot.  Harpo-Brown's two outstanding pretrial motions that concerned his civil cases (Doc. 30) and pretrial bond (Doc. 33) have been similarly addressed (Docs. 34; 58 at 2) and are similarly **DISMISSED** as moot.

[5] Harpo-Brown also moved the Court to allow him to possess his presentencing investigation report ("PSR") and subsequently filed a variety of other motions concerning that report.  Docs. 83; 94; 95; 101; 102; 104; 107. The Court directed the Clerk of Court to send Harpo-Brown a copy of the redacted PSR (Doc. 90) and resolved Harpo-Brown's remaining motions concerning his PSR at the status conference on December 16, 2021.  Doc. 109.  Accordingly, those motions (Docs. 83; 94; 95; 101; 102; 104; 107) are **DISMISSED** as moot.

The Court interpreted that request to mean Harpo-Brown thought "it necessary to review the transcript to allow him to reply to the Government's response to his motion for new trial and, if necessary, to amend the grounds he has raised in his motion for new trial." Doc. 88.  Accordingly, the Court made arrangements for Harpo-Brown to have a copy of the transcript.  *Id.*

Harpo-Brown has maintained a steadfast desire to continue self-representation throughout his trial and subsequent post-conviction proceedings.  Docs. 36; 105; 109.  Given Harpo-Brown's acknowledged limitations in continued self-representation post-trial, the Court considered appointing counsel to represent him outright.[6]  Doc. 106 at 2 (citing Harpo-Brown's numerous post-conviction motions).  Harpo-Brown reiterated his desire to continue self-representation at a status conference held on December 16, 2021.  Doc. 109 at 1.  Harpo-Brown further stated his decision to do so was "voluntary and unequivocable" in response to the Court's renewed *Faretta* inquiry.  *Id.*  At that same status conference, Harpo-Brown requested additional time to supplement, if necessary, his joint motion for judgment of acquittal or in the alternative, a new trial, and the Court gave him until January 7, 2022, to do so.  *Id.* at 2.  Harpo-Brown did not file a supplemental response.

---

[6] Arguably, the constitutional right to self-representation terminates once a criminal defendant's trial is complete. *Martinez v. Ct. of Appeal of Cal., Fourth App. Dist.*, 528 U.S. 152, 154 (2000) ("our specific holding [in *Faretta v. California*, 422 U.S. 806 (1975)] was confined to the right to defend oneself at trial"). As the *Martinez* Court noted, "[t]he status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict." *Id.* at 162.  But *Martinez* concerned the right to self-representation on appeal, and despite the *Martinez* Court's clear suggestion that the right "changes dramatically when a jury returns a guilty verdict," subsequent Courts of Appeals have declined to extend the *Martinez* holding to post-conviction proceedings short of direct appeal.  *See, e.g.*, *United States v. Cano*, 519 F.3d 512, 515 (5th Cir. 2008) (Defendant's constitutional right to self-representation extends to sentencing proceedings); *United States v. Jones*, 489 F.3d 243, 248 (6th Cir. 2007) ("Thus, we may safely say that a criminal defendant in federal court has a right to represent himself or herself at sentencing."); *United States v. Morgan*, 770 F. App'x 389, 391 (9th Cir. 2019) ("A district court is constitutionally prohibited" from imposing counsel at sentencing[.]).

## II. STANDARD OF REVIEW

### A. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29(c)(2) provides that "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." When evaluating a motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the Government and determine whether a reasonable jury would have found the defendant guilty beyond a reasonable doubt. *United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006) (citation omitted). Accordingly, the Court must "resolve any conflicts in favor of the Government, draw all reasonable inferences that tend to support the prosecution's case, and assume that the jury made all credibility choices in support of the verdict." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009); *United States v. Barfield,* 999 F.2d 1520, 1522 (11th Cir. 1993). "The prosecution need not rebut all reasonable hypotheses other than guilt." *United States v. Sellers,* 871 F.2d 1019, 1021 (11th Cir. 1989). In other words, "[i]t is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt." *United States v. Thompson,* 473 F.3d 1137, 1142 (11th Cir. 2006), *abrogated on other grounds as recognized by United States v. DiFalco*, 837 F.3d 1207, 1218 (11th Cir. 2016).

### B. Motion for New Trial

Harpo-Brown also moved for a new trial pursuant to Federal Rule of Criminal Procedure 33. "The ultimate decision of whether to grant a new trial motion falls within the sound discretion of the trial court." *United States v. Albury*, 782 F.3d 1285, 1295

(11th Cir. 2015) (quotation marks omitted).  Although the Court is not required to view the evidence in the light most favorable to the Government, the Court nevertheless must remain respectful of the role played by the jury in our legal system.  "[A] jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly."  *United States v. Deason*, 2008 WL 4862691, at *3 (M.D. Ga. Nov. 10, 2008) (quotation marks omitted); *see also Riley v. Camp*, 130 F.3d 958, 984 (11th Cir. 1997) (Birch, J., concurring) ("[I]t must be emphasized that we do not lightly overturn jury verdicts.").

A new trial may only be granted (1) based on newly discovered evidence, or (2) based on any other reason, "typically the interest of justice."  *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006) (citing Fed. R. Crim. P. 33).  A new trial may be granted in the interest of justice if the motion is "filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2).  Here, Harpo-Brown has timely moved for a new trial within fourteen days after the verdict.  Doc. 77.  Harpo-Brown has not asserted that the discovery of new evidence warrants a new trial beyond mere conclusory allegations that such evidence exists.  *See generally id*.  Accordingly, the Court will apply the "broader 'interest of justice' standard" in assessing whether a new trial is warranted.  *United States v. Hall*, 854 F.2d 1269, 1271 (11th Cir. 1988).  Under this standard, the Court has "very broad discretion in deciding whether there has been a miscarriage of justice."  *Id.*

## III. DISCUSSION

### A. Harpo-Brown's Speedy Trial Act Rights Were Not Violated

Harpo-Brown filed his Speedy Trial Act demand on March 31, 2021.  Doc. 32.
Harpo-Brown maintains his conviction was obtained in violation of the Act.  Doc. 77.
That argument fails; at most only fifteen days ran on the speedy trial clock before the
start of trial.

The Sixth Amendment states: "In all criminal prosecutions, the accused shall
enjoy the right to a speedy and public trial[.]"  U.S. Const. amend. VI.  To strengthen this
Constitutional mandate, Congress passed the Speedy Trial Act.  The Speedy Trial Act
requires that the trial of any criminal defendant who pleads not guilty must begin "within
seventy days from the filing date (and making public) of the information or indictment, or
from the date the defendant has appeared before a judicial officer of the court in which
such charge is pending, whichever date last occurs."  18 U.S.C. § 3161(c)(1).  If the
defendant is not tried within the proper time limit, the indictment must be dismissed
upon motion by the defendant.  18 U.S.C. § 3162(a)(2).  However, the Speedy Trial Act
"excludes from the 70-day period days lost to certain types of delay."  *Bloate v. United
States*, 559 U.S. 196, 203 (2010).  Here, Harpo-Brown's speedy trial clock began to run
on February 2, 2021, the date of his initial appearance.  Doc. 14.  On July 27, 2021—
175 days later—Harpo-Brown's trial began.  Docs. 67; 68; 69.

Excludable delay resulting from motion practice and excludable delay resulting
from the Court's standing order in response to the COVID-19 pandemic are relevant
here.  *See* 18 U.S.C. § 3161(h)(1)(D); 18 U.S.C. § 3161(h)(7)(A).  A district court may
grant a continuance on its own motion or on the motion of the parties "if the judge

granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A).  Where a period of delay arguably stems both from a continuance and from a pretrial motion, the Court need not determine which provision controls so long as one is clearly applicable to toll the speedy trial clock.  *See United States v. Hughes*, 840 F.3d 1368, 1379, 1380 (11th Cir. 2016) (rejecting defendant's contention that the Magistrate Judge's failure to make an on-the-record, ends-of-justice finding rendered the period non-excludable because the Government's oral motion during that same period hearing automatically stopped the speedy trial clock).

Here, the Court made three "ends of justice" findings under § 3161(h)(7)(A).[7]  On February 1, 2021, the Court renewed a standing order that tolled Harpo-Brown's speedy trial clock through March 31 due to the coronavirus pandemic.[8]  Doc. 10.  The Court made an additional "ends of justice" finding on April 2, 2021, again tolling the speedy trial clock through May 31 due to the coronavirus pandemic.  Docs. 40; 41.  That "ends of justice" finding—the last before Harpo-Brown's trial—expired on May 31, 2021.  *Id.*  Thus, under § 3161(h)(7)(A), the period of June 1, 2021, through July 26 was not excludable for speedy trial purposes because no "ends of justice" exclusions pertained to this timeframe.

---

[7] The first extension entered January 14, 2021, tolled Harpo-Brown's speedy trial clock through January 31.  Doc. 5.  Because Harpo-Brown's speedy trial clock did not start until his first appearance on February 2, 2021, this order is irrelevant to the Court's analysis.

[8] Additionally, on February 2, 2021, the Court entered a scheduling order that expressly tolled the speedy trial clock under § 3161(h)(7)(A) until March 14 for defense counsel to prepare motions.  Doc. 15.  Even though that order expired on March 15, 2021, the standing order from February 1 kept the speedy trial clock paused until March 31.  Doc. 10.

However, the Speedy Trial Act also excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on ... such motion." 18 U.S.C. § 3161(h)(1)(D).  It does not matter whether the motion was filed by the prosecution or the accused, the filing of a pretrial motion automatically stops the speedy trial clock until its resolution, regardless of whether it "actually causes" any delay.  *Hughes*, 840 F.3d at 1381 (holding district court properly tolled speedy trial clock for Government's oral motion).  Because the Government filed written motions on June 16, 2021, and Harpo-Brown filed additional motions thereafter, the speedy trial clock stopped until those motions were resolved on July 26, 2021.  Docs. 50; 51.  Therefore, the only non-excludable period is that from June 1, 2021 to June 15, the fifteen-day period when neither § 3161(h)(1)(D) nor § 3161(h)(7)(A) applied.  *See Hughes*, 840 F.3d at 1380.  In short, Harpo-Brown's Speedy Trial Act rights were not violated, and his motion on that ground is **DENIED**.

**B. Harpo-Brown was Afforded a Fair Trial**

Harpo-Brown next asserts he is entitled to relief because of "deliberate and willful custodial abuse."  Doc. 77.  The Court has covered this before.  Doc. 75.  Six days before trial, Harpo-Brown filed a motion to dismiss his indictment asserting "in conclusory fashion, that the Government's prosecution stemmed from a complex conspiracy involving the prosecutors, state and federal judges, and former landlords of Harpo-Brown's in Atlanta and Augusta."  *Id.*  At that motion hearing, the Court found that neither the motion nor Harpo-Brown's oral argument produced any evidence "that similarly situated individuals who engaged in the same or similar conduct" were not prosecuted, or that the Government had an improper motive for prosecuting him.  *Id.*

Harpo-Brown's instant motion merely recites the same conclusory allegation.  Doc. 77.
It yields the same result.  *See Campa*, 459 F.3d at 1151; *Molina*, 443 F.3d at 828.
Accordingly, Harpo-Brown's "deliberate and willful custodial abuse" allegation is without
merit, and his motion on that ground is **DENIED**.

### C. The Evidence Against Harpo-Brown was Sufficient to Support the Verdict

Harpo-Brown's contention that the evidence produced at trial was insufficient to
support a verdict of guilt is similarly baseless.  *See* Doc. 77.  A district court "must enter
a judgment of acquittal if the evidence is insufficient to sustain a conviction of such
offense or offenses."  Fed. R. Crim. P. 29.  When evaluating such claims, the Court
must view the evidence in the light most favorable to the Government, making all
reasonable inferences and credibility determinations in favor of the jury's verdict.  *United
States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999).  "Evidence is sufficient to support
a conviction if a reasonable trier of fact could find that the evidence established guilt
beyond a reasonable doubt."  *Maxwell*, 579 F.3d at 1299 (quotation marks omitted).

The standard for a new trial is less stringent.  When considering a motion for new
trial based on sufficiency of evidence, "the court need not view the evidence in the light
most favorable to the verdict."  *United States v. Hernandez*, 433 F.3d 1328, 1335 (11th
Cir. 2005) (quoting *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985)).
Instead, "[i]t may weigh the evidence and consider the credibility of the witnesses."  *Id*.
Harpo-Brown falls well short of meeting either standard.

A jury convicted Harpo-Brown on one count of corruptly influencing the due
administration of justice in violation of 18 U.S.C. § 1503.  Doc. 73.  Trial evidence
conclusively showed that Harpo-Brown was the pro se plaintiff in three civil matters

pending in the Southern District of Georgia.  Docs. 71-2; 71-5; 71-7.  In one of those

cases, Harpo-Brown was ordered to submit an amended complaint after the Magistrate

Judge found one of his filings to be "the quintessential shotgun pleading that has been

soundly condemned by the Eleventh Circuit Court of Appeals."  Doc. 71-8 at 2-3.

Harpo-Brown responded by filing motions in each of his three civil cases that disclosed

the Magistrate Judge's home address, first name of his wife, and further asserted if the

Magistrate Judge failed recuse, Harpo-Brown would reveal "intimate" and "salacious"

details of the Magistrate Judge's life.  Docs. 71-10, 71-11, 71-13.

The Magistrate Judge testified that he perceived Harpo-Brown's motion as a

threat and an attempt to control the outcome of his three civil cases.  Doc. 98 at 149-96.

The Magistrate Judge explained during his testimony that Harpo-Brown's motions to

recuse were out of the ordinary, that he had never seen or spoken with Harpo-Brown,

and there was nothing in his background which would be considered salacious.  *Id.* at

100-101.  Significantly, the Magistrate Judge testified that the contents of Harpo-

Brown's motion placed him in fear for his safety and that of his family.  *Id.* at 102.

In his defense, Harpo-Brown testified as to his "intimate relationship" with the

Magistrate Judge.  Doc. 99 at 310-55.  No additional evidence was introduced to

corroborate this testimony.  *See* Docs. 97; 98; 99.  The Court instructed the jury that to

find Defendant guilty of obstruction of justice, they must find beyond a reasonable doubt

that (1) there was a proceeding before this court; and (2) the Defendant knowingly and

corruptly tried to influence, obstruct, or impede the due administration of justice in that

judicial proceeding.  Doc. 72.  Here, the evidence conclusively showed Harpo-Brown

had civil actions pending in the Southern District of Georgia and that an "intimate

relationship" with the Magistrate Judge warranted his recusal.  *See* Docs. 97; 98; 99.
More importantly, the evidence showed Harpo-Brown threatened to reveal that "intimate
relationship" in an attempt to control the outcome of his cases.  *See, e.g.*, Doc. 98 at
149-96.  Finally, the evidence clearly was sufficient for the jury to find that Harpo-Brown
knowingly and corruptly tried to influence, obstruct, or impede the due administration of
justice in his three civil cases before the Court.  The fact that the jury chose not to
believe Harpo-Brown's version of events does not entitle him to a judgment of acquittal
or a new trial.  Accordingly, Harpo-Brown's motion with respect to sufficiency of
evidence is **DENIED**.

**D. Harpo-Brown Presents No Evidence of *Brady* Violations**

Harpo-Brown next asserts three conclusory *Brady* violations.  He alleges the
Government: (1) used perjured testimony; (2) failed to disclose exculpatory evidence;
and (3) failed to disclose discoverable material in a timely manner.  Doc. 77 at 2.  In
*Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of
evidence favorable to an accused upon request violates due process where the
evidence is material either to guilt or to punishment."  373 U.S. 83, 87 (1964).  As to
Harpo-Brown's first allegation, the use of perjured testimony is a special species of
*Brady* error that occurs when "the undisclosed evidence demonstrates that the
prosecution's case included perjured testimony and that the prosecution knew, or
should have known, of the perjury."  *Ventura v. Att'y Gen., Fla.*, 419 F.3d 1269, 1276-77
(11th Cir. 2005) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976).  In order to
prevail on a perjury-based *Brady* violation, "a petitioner must establish that the
prosecutor knowingly used perjured testimony, or failed to correct what he subsequently

learned was false testimony, and that the falsehood was material." *Tompkins v. Moore*, 193 F.3d 1327, 1339 (11th Cir. 1999) (quotation marks omitted). When the Government knowingly uses false testimony, a different and more defense friendly materiality standard applies. *Ventura*, 419 F.3d at 1283-84. But Harpo-Brown fails to even meet this more lenient standard because he offers no support for his contention that any of the three witnesses called by the Government—the Supervisory Deputy Clerk of Court, the FBI case agent, and the Magistrate Judge—testified falsely. *See generally* Doc. 77. Accordingly, Harpo-Brown is not entitled to a new trial or judgment of acquittal for perjured testimony.

Similarly, Harpo-Brown is not entitled to relief for the alleged non-disclosure of exculpatory material because there was none to be disclosed. The physical evidence at trial consisted entirely of Harpo-Brown's own pleadings and orders entered in his three civil cases filed in the Southern District of Georgia. Docs. 45; 56; 60; 63. Contrary to Harpo-Brown's allegations, the Government timely disclosed all discoverable material both on the record and at pretrial hearings. *See id.* Accordingly, Harpo-Brown suffered no *Brady* violations and his motion on that ground is **DENIED**.

**E. Harpo-Brown's Threat is Not Constitutionally Protected Speech**

Finally, Harpo-Brown contends the Government's prosecution was improper because the threat to disclose "intimate details" of his alleged relationship with the Magistrate Judge is constitutionally protected speech. Doc. 77 at 2. Relevant to this case, 18 U.S.C. § 1503(a) punishes activity that "corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice[.]" The

obstruction of justice statute provides a limited standard of culpability that confines its coverage to activity that intends to influence judicial proceedings. *Pettibone v. United States*, 148 U.S. 197, 206-07 (1893).  To be liable under the statute, the defendant's conduct must have a sufficient "nexus," with the judicial proceedings.  *United States v. Aguilar*, 515 U.S. 593, 599 (1995).  In other words, it must be related in time, causation, or logic with the proceedings the defendant is being charged with corruptly influencing. *Id.*  When this *mens rea* requirement is satisfied, the activity does not fall within the scope of First Amendment protection.  *United States v. Parker*, 871 F.3d 590, 604-05 (8th Cir. 2017) ("all of the purported First Amendment issues raised by Defendant[] are simply another way of arguing Defendant[] did not act with [the requisite intent]"); *United States v. Jeter*, 775 F.2d 670, 679 (6th Cir. 1985) ("The reach of [18 U.S.C. § 1503(a)] is clearly limited to such constitutionally unprotected and purportedly illicit activity as that undertaken by [the Defendant]; therefore its application to [the Defendant] is neither overbroad under the First Amendment nor void-for-vagueness under the Fifth Amendment.").

Harpo-Brown provides no explanation for how his prosecution was "based entirely upon factual evidence concerning the use of constitutionally protected … speech."  Doc. 77. at 2.  To the contrary, the Government "prosecuted Harpo-Brown because he attempted to obstruct justice by threatening a federal judge."  Doc. 75. Evidence in the record, consisting of Harpo-Brown's own filings, shows that Harpo-Brown threatened to reveal "salacious details" of an "intimate relationship" with the Magistrate Judge if the Magistrate Judge did not recuse himself.  Docs. 71-10; 71-11; 71-13.  Moreover, the jury found Harpo-Brown acted with the requisite intent to take this

threat outside the scope of First Amendment protections.  Docs. 72 at 5; 73.

Accordingly, the obstruction of justice statute as applied to Harpo-Brown passes

constitutional muster and his motion on that ground is **DENIED**.

## IV. CONCLUSION

For the reasons discussed above, Harpo-Brown's motion for judgment of

acquittal or in the alternative, a new trial is without merit, and thus, that motion (Doc.

77), is **DENIED**.

**SO ORDERED**, this 3rd day of February, 2022.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT